IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WILBERT JOHNESE and                                        PLAINTIFFS
SHARON DENISE JOHNESE


v.                          NO. 4:06-CV-01632 GTE


ASHLAND, INC., et al.                                       DEFENDANTS

## ORDER

Presently before the Court is non-party PPG Industries, Inc.'s Motion to Quash and for

Protective Order.

## I.      BACKGROUND

In their Complaint, Plaintiffs allege that Plaintiff Wilbert Johnese was employed by

Ameron International Corporation's Ameron Protective Coatings Division from 1990 to 2003.

Plaintiffs further state that in such capacity, he was exposed on a daily basis to various

substances and chemicals, which resulted in Mr. Johnese developing Acute myelogenous

leukemia ("AML").  PPG acquired Ameron's Protective Coatings Group in August of 2006.

Neither Ameron nor PPG is a party to this lawsuit.

Plaintiffs initially served PPG with a subpoena on or about August 13, 2007, seeking a

Rule 30(b)(6) deposition and production of documents.  PPG states that it timely objected to the

expansive scope of the duces tecum requests and to the broad range of the corporate

representative deposition notice, and counsel for the parties began working toward a

compromise.  PPG also states that in the following months, it produced more than 9,000 pages of

1

documents covering a wide range of topics.

On or about January 23, 2007, Plaintiffs provided PPG counsel with "Plaintiffs' Second Amended Rule 30(b)(6) Notice of Intention to Take the Oral and Videotaped Deposition of the Corporate Representative(s) of PPG Industries, Inc. With Subpoena Duces Tecum," which was withdrawn following a telephone conference.  On January 28, 2008, Plaintiffs provided a "Third Amended Rule 30(b)(6) Notice of Intention to Take the Oral and Videotaped Deposition(s) of the Corporate Representative(s) of PPG Industries, Inc. with Subpoena Duces Tecum."  Counsel for PPG continued to object to the scope of the "Areas of Testimony" on which a corporate deposition is sought.  PPG states that it set forth specific, relevant areas of testimony on which it was willing to produce a witness in a letter, but Plaintiffs' counsel rejected PPG's offer on January 30, 2008.

## II.    MOTION TO QUASH OR FOR PROTECTIVE ORDER

In the present motion, PPG objects to Plaintiffs' Third Amended Rule 30(b)(6) Deposition Notice, and requests that it be quashed.  Alternatively, PPG requests that the Court enter a protective order and/or modify Plaintiffs' subpoena, reasonably limiting the scope of the "Areas of Testimony" and the requests for production of documents.  PPG correctly states that Federal Rule of Civil Procedure 45(c)(3)(A)(i) and (iv) requires a court to quash or modify a subpoena on timely motion when the subpoena "fails to allow a reasonable time to comply" or "subjects a person to undue burden."  PPG sets forth specific objections to each of the "Areas of Testimony."  PPG proposes the following limitations on the "Areas of Testimony":

1. The identify of suppliers of aromatic hydrocarbon solvents to the Little Rock manufacturing facility operated by Ameron between July 1996 and September 2002.  This topic is limited in scope to aromatic hydrocarbon solvents supplied in

2

bulk or in drums for use as a raw material and specifically excludes all other raw materials which may contain some amount of solvent.

2.  The general use of aromatic hydrocarbon solvents as a raw material in products manufactured at the Little Rock facility between July 1996 and September 2002. This topic is limited in scope to the general use of aromatic hydrocarbon solvents in Ameron products manufactured during this period and specifically excludes (a) testimony regarding the formula of any specific product and (b) testimony regarding the use of raw materials, other than aromatic hydrocarbon solvents supplied in bulk or in drums that may contain some amount of solvent.

3.  The general duties and responsibilities of "material handlers," "batch makers," and "Accutint" specialists [] at the Little Rock facility operated by Ameron between July 1996 and September 2002.

4.  Industrial hygiene monitoring results of testing conducted at the Little Rock facility between July 1996 and September 2002 for benzene, xylene and toluene.

5.  The location, size and use of bulk storage tanks for aromatic hydrocarbon solvents at the Little Rock facility between July 1996 and September 2002.

6.  The use of aromatic hydrocarbon solvents for clean-up and maintenance operations at the Little Rock manufacturing facility between July 1996 and September 2002.

Although the parties have resolved the issues surrounding the production of the vast majority of the requested documents, PPG continues to object to Document Requests 10 and 11: (1) disclosure of workers' compensation file materials (other than Plaintiff), and (2) production of the documents surrounding PPG's acquisition of Ameron's Protective Coatings Group.

Plaintiffs argue that PPG has the burden to support its objections or claims of privilege, and has failed to do so.  Plaintiffs state that PPG has been in possession of Plaintiffs' subpoena and duces tecum since August 13, 2007, and has been fully aware of the general and specific areas of testimony sought in the depositions of PPG representatives.  Plaintiffs further set forth the necessity for each of the "Areas of Testimony."

**Area of Testimony 1**

> 1.  The identity of the manufacturers, distributors, sellers, suppliers and other entities in the chain of distribution, who sold, provided, shipped, or otherwise delivered from origin to the Ameron PPG facilities during the relevant time period, the following non-exclusive list of aromatic hydrocarbon solvents, raw material ingredients, and component products in "Exhibit A" attached to this notice.

PPG states that this Area of Testimony is facially overbroad, as the exhibit contains fifty-two products/materials (with subcategories) and requires PPG to identify anyone who came into contact with or had anything to do with each of the listed products/materials from the date of the creation of the product/material until it ended up in or as a finished product at all Ameron facilities.  PPG also states that the information is readily available from any of the current defendants who may have come in contact with any of the listed products/materials.  However, PPG states that it is willing to produce a corporate designee to testify to the "[i]dentity of the suppliers of aromatic hydrocarbon solvents to the Little Rock manufacturing facility operated by Ameron between July 1996 and September 2002."  However, the Court notes that PPG limits this topic "in scope to aromatic hydrocarbon solvents supplied in bulk or in drums for use as a raw material and specifically excludes all other raw materials which may contain some amount of solvent."

Plaintiffs state that they cannot limit the scope of this item to the identity of suppliers of aromatic hydrocarbon solvents provided to Ameron's Little Rock location between July 1996 and September 2002 because Mr. Johnese was exposed to benzene at Ameron beginning in May of 1990.  Furthermore, Plaintiffs state that most of the Defendants have responded with vague and ambiguous responses with regard to this topic, aromatic hydrocarbon solvents are not the

4

only benzene-containing products to which Mr. Johnese was exposed at Ameron, and Mr.

Johnese was in an indoor environment where benzene-containing solvents and raw materials and

certain specific finished products were used in volume daily.  Plaintiffs state that PPG is in the

best position to provide this testimony.

PPG responds by noting that Plaintiffs acknowledge their failure to obtain the relevant

information from parties to the suit, and Plaintiffs should fully pursue discovery they deem

relevant from parties to the case.  The Court agrees with PPG.  However, PPG has failed to

explain why the Court should limit the scope of the testimony to July 1996 through September

2002 and limit the testimony to the Little Rock facility, when it appears to be undisputed that Mr.

Johnese was employed from May 1990 through September 2002 and worked at facilities in

addition to the Little Rock facility.  Therefore, PPG is directed to produce testimony regarding

the following:

> The identify of suppliers of aromatic hydrocarbon solvents to the Ameron PPG
> facilities, at which Mr. Johnese worked, between May 1990 and September 2002.
> This topic is limited in scope to aromatic hydrocarbon solvents supplied in bulk
> or in drums for use as a raw material and specifically excludes all other raw
> materials which may contain some amount of solvent.

## Area of Testimony 2

> 2.  Procedures used during the relevant time period at the Ameron PPG facilities
> by which all types and quantities of aromatic hydrocarbon solvents used during
> the relevant time period were purchased and/or acquired.

PPG states that this item is not meaningfully limited in scope and has no relevance to any

of Plaintiffs' claims, as the purchase/acquisition "procedure" of a non-party would have no

bearing on Plaintiffs' claimed exposure to benzene and PPG has already produced thousands of

purchasing records.

Plaintiffs state that the purchase/sales records of defendant-suppliers provided to Plaintiffs do not speak for themselves.  Plaintiffs further state that Defendants have responded to Plaintiffs' discovery with vague and ambiguous responses, and PPG is in the best position to clear up any misconception regarding the method of acquisition of benzene-containing solvents and raw materials and certain specific finished products provided to Ameron's Little Rock location from May 1990 to December 2003.

Once again, PPG responds by noting that Plaintiffs acknowledge their failure to obtain the relevant information from parties to the suit, and Plaintiffs should fully pursue discovery they deem relevant from parties to the case.  The Court agrees with PPG.  Plaintiffs should actively seek this information from parties to this lawsuit.  PPG's objection is sustained.

**Area of Testimony 3**

    3.  Ameron International's use of aromatic hydrocarbon solvents, coal tar, and coal tar paste as raw material ingredients at Ameron's Vimy Ridge Road facility during the relevant time period, including procedures involved in handling these raw materials.

PPG states that it has offered to provide a witness to testify as to the general use of aromatic hydrocarbon solvents as a raw material, but as written, Plaintiffs' request would require the witness to possess knowledge of the chemical composition/formula of all products containing hydrocarbon solvents.[1]  Plaintiffs state that PPG mistakenly asserts that the witness would be required to possess knowledge of the chemical composition/formula of all products containing

---

[1]PPG also states that such information is confidential and proprietary and would place an undue burden on a non-party.  However, the Court notes that Plaintiffs assert that they have repeatedly offered to enter into a separate confidentiality agreement or protective device more stringent than the Order on Confidentiality already in place.  Therefore, the Court does not rely on confidentiality and proprietary information as a basis for sustaining PPG's objection.

hydrocarbon solvents.

The Court agrees with PPG that the proffered testimony is sufficient, except that the

Court will not limit the time frame and location, as discussed in Area of Testimony 1.

Therefore, PPG is directed to produce testimony regarding the following:

> The general use of aromatic hydrocarbon solvents as a raw material in products
> manufactured at the Ameron PPG facilities, at which Mr. Johnese worked,
> between May 1990 and September 2002.  This topic is limited in scope to the
> general use of aromatic hydrocarbon solvents in Ameron products manufactured
> during this period and specifically excludes (a) testimony regarding the formula of
> any specific product and (b) testimony regarding the use of raw materials, other
> than aromatic hydrocarbon solvents supplied in bulk or in drums that may contain
> some amount of solvent.

## Areas of Testimony 4, 5, and 6

> 4.  The transactional history and/or negotiation between Ameron International and
> the entities who provided the following products to Ameron via sale, transfer, or
> exchange during the relevant time period:
> • Valspar solvent thinners and cleaners acquired through Ameron's 1997
>   purchase of Valspar product lines.
> • Glidden or Devoe solvent thinners and cleaners under the "Glidden" or
>   "Devoe" name acquired through Ameron's 1996 purchase of Glidden or
>   Devoe product lines from Imperial Chemical Industries PLC.

> 5.  The identity, by name, of any and all specific Valspar, Glidden and/or Devoe
> solvent thinners and cleaner products shipped to the Ameron PPG facilities during
> the relevant time periods.

> 6.  Use of Valspar, Glidden and/or Devoe solvent thinners and cleaner products
> by employees at the Ameron PPG facilities during the relevant time periods.

PPG states that this Area of Testimony is objectionable for the same reasons as Area of

Testimony 1.  PPG also states that assuming that the requested information is aimed at an actual

Defendant, it is more properly the subject of discovery from that named Defendant.  PPG further

states that Plaintiffs fail to define "transactional history and/or negotiation," and Ameron's

"negotiation" with suppliers or manufacturers is wholly irrelevant to Plaintiffs' personal injury claims.  Additionally, PPG states that because Mr. Johnese had limited employment as an assistant to "batch makers," Area 6 is not reasonably limited in scope.

Plaintiffs state that the acquisition of Valspar, Devoe, and Glidden solvents, thinners and cleaners during the time period when Mr. Johnese worked at Ameron is relevant because he has testified that he used Valspar, Devoe, and Glidden solvents, thinners, and cleaners while working at Ameron.  Plaintiffs further state that they have propounded discovery on the Defendants who manufactured these products, and those discovery responses are still pending.  Plaintiffs assert that the amount of discovery a plaintiff may properly obtain is not limited by PPG or any Defendant's biased views regarding the merits or extent of Plaintiffs' case.

PPG responds by stating that Plaintiffs should fully pursue discovery they deem relevant from parties to the case.  The Court agrees.  PPG's objections are sustained.

## Areas of Testimony 7 and 8

7.  The identity of the manufacturers, distributors, sellers, suppliers and other entities in the chain of distribution, who sold, provided, shipped, or otherwise delivered from origin to the Ameron PPG facilities during the relevant time period, solvent-based colorant pastes, whose ingredients within the colorant paste product include the following non-exclusive list of aromatic hydrocarbon solvents: Xylene, Toluene, High Flash Naphtha, 1, 2, 4 Trimethylbenzene, 1,3,5 Trimethylbenzene, Ethylbenzene, Heavy Aromatic Naphtha, VM & P Naphtha, and Petroleum Naphtha.

8.  The purpose and use of solvent-based colorant pastes within the Ameron facilities during the relevant time period, to include "Accutinting" operation procedures.

PPG states that Area of Testimony 7 is objectionable for the same reasons as Area of Testimony 1.  PPG states that Area of Testimony 8 is not reasonably limited in scope, as it

8

presumably references all solvent-based colorant pastes, and would require the witness to be

knowledgeable in the chemical composition of all solvent-based colorant pastes used at Ameron

over a thirteen-year period.  Further, PPG states that it has offered to provide a witness to testify

as to the general use of aromatic hydrocarbon solvents as a raw material in products

manufactured at the Little Rock facility, as discussed above.

Plaintiffs state that PPG greatly exaggerates the scope of what Plaintiffs seek in this area,

and that they simply seek testimony regarding the Accutinting process, how solvent-based

colorant pastes were used at Ameron, and the general composition of these solvent-based

colorant pastes.  Mr. Johnese was an Accutinter at Ameron, and used solvent-based colorant

pastes on a daily basis to do his job.  Plaintiffs also state that aromatic hydrocarbon solvents used

as raw materials at Ameron are completely distinguishable from solvent-based colorant pastes.

PPG further responds by stating that testimony regarding colorant pastes may be wholly

unnecessary in light of the testimony Dr. Daniel Teitelbaum, Plaintiffs' occupational medicine

and toxicology expert, as follows:

> For the colorants themselves, I have an opinion that they are not causally related
> to acute myelgenous leukemia.  Because I don't have material safety data sheets
> for each and every colorant as far as each and every ingredient – there are always
> proprietary components of those and so on – I can't say they wouldn't be
> carcinogens of another sort, but I don't think they're involved in this case.

Plaintiffs have not responded to this observation.  PPG's objections are sustained.

## Area of Testimony 9

9.  The procedure by which "material handlers" or "batch makers" at the
Ameron/PPG facilities manufactured Ameron paint and solvent products in main
production and small batch operations during the relevant time periods.  This area
of testimony shall include identification of general or specific types of raw solvent
and hydrocarbon ingredients used to manufacture paint and solvent products, the

procedures used at the Vimy Ridge Road facility regarding batch tickets, and the type and general amount of petroleum hydrocarbon solvent products necessary to produce batches of paint and solvent products.

PPG states that it has offered to produce a witness to testify relative to "[t]he general duties and responsibilities of 'material handlers,' 'batch makers,' and 'Accutint' specialists," and the general use of aromatic hydrocarbon solvents as a raw material.  However, the Court notes that PPG limits this testimony to "the Little Rock facility operated by Ameron between July 1996 and September 2002."  PPG further states that Plaintiffs' request is overbroad and unduly burdensome, as it would require PPG to identify and educate a witness relative to the chemical composition of all of the above products.

Plaintiffs argue that Mr. Johnese worked as an assistant to "material handlers" and "batch makers," and as such, he gathered raw materials and dumped them into vessels for blending, which would frequently "splash back" on him.  Plaintiffs also state that Mr. Johnese participated in tank cleaning operations.  Therefore, Plaintiffs contend that the Area of Testimony is relevant and necessary.

The Court agrees with PPG that the proffered testimony is sufficient, except that the Court will not limit the time frame and location, as discussed in Areas of Testimony 1 and 3. PPG shall produce testimony regarding the following:

> The general duties and responsibilities of "material handlers," "batch makers," and "Accutint" specialists [] at the Ameron PPG facilities, at which Mr. Johnese worked, between May 1990 and September 2002.

## Areas of Testimony 10, 11, and 12

> 10.  Policies and procedures used by Ameron and Ameron-contracted Industrial Hygienists regarding area testing and/or sampling for benzene, toluene, and xylene at or within the Ameron PPG facilities during the relevant time period.

11.  The location, size, content, quantity, purpose and use of solvent storage tanks at the Ameron Vimy Ridge Road facility during the relevant time period, including procedures by which bulk and other quantities of solvent products were purchased and received at the facility during the relevant time period.

12.  Use and origin of petroleum hydrocarbon solvent products for clean-up and maintenance at the Ameron/PPG facilities during the relevant time period.

PPG does not specifically address Areas of Testimony 10, 11, and 12.  However, it appears that PPG proposes the following areas of testimony as substitutes:

4.  Industrial hygiene monitoring results of testing conducted at the Little Rock facility between July 1996 and September 2002 for benzene, xylene and toluene.

5.  The location, size and use of bulk storage tanks for aromatic hydrocarbon solvents at the Little Rock facility between July 1996 and September 2002.

6.  The use of aromatic hydrocarbon solvents for clean-up and maintenance operations at the Little Rock manufacturing facility between July 1996 and September 2002.

As PPG has not set forth why Plaintiffs' requested Areas of Testimony 10, 11, and 12 are unduly burdensome, the Court declines to limit those Areas of Testimony.

**Document Request 10**

10.  All documents in PPG possession[,] custody, or control relating to worker's compensation claims filed by persons alleging injury from cancers including but not limited to blood cancers such as AML as a result of occupational exposure to chemicals and/or substances.  This request is limited to the former Ameron Jefferson Parish, Louisiana location from January 1990 to September 1996 and the former Ameron Little Rock, Arkansas location from January 1996 to December 2002.

PPG states that the requested information is not relevant because PPG and Ameron are not parties.  Furthermore, PPG states that it considers the workers' compensation claims of individuals, other than Mr. Johnese, confidential, and will not disclose such information.  PPG asserts that this document request seeks information protected by Federal law under HIPPA.

PPG also states that no "centralized" file for workers' compensation claims arising out of the former Ameron facility in Little Rock exists.  Rather, such information is maintained in individual employee files.

Plaintiffs state that PPG does not have standing to object based upon relevancy, undue burden or the alleged broadness of the document request. The Court disagrees with this characterization of the Federal Rules of Civil Procedure.  However, Plaintiffs argue that such information is relevant, as many of the Ameron products at issue were composed of raw materials supplied to Ameron by Defendants in this case.  Additionally, Plaintiffs state that Ameron has a duty to maintain records of workers' compensation claims under Arkansas law.

The Court declines to rule regarding this issue without further briefing regarding the effect of HIPPA on the disclosure of workers' compensation information and the availability of procedures for obtaining such information through the state.  Additionally, the Court would like clarification as to whether there is any way to obtain a listing of workers' compensation claims arising out of the former Ameron facility in Little Rock, aside from searching through individual employee files, and if not, how many employee files would have to be searched.

**Document Request 11**

> 11.  Documents reflecting PPG's incorporation and purchase or acquisition in 2006 of Ameron International's Coatings Group, or Performance Coatings Division, particularly as it pertains to liabilities incurred, document retention policies, and facilities acquired.

PPG states that this request seeks confidential business information and is irrelevant to Plaintiffs' claims because PPG and Ameron are not parties to this action, and have not attempted to invoke or stand behind any provision in the transactional documents on any issue.  PPG

further states that it acquired Ameron four years after Mr. Johnese's employment with Ameron ended.

Plaintiffs respond by stating that PPG has not stated or submitted any Ameron document to Plaintiffs regarding Ameron's document retention policy, nor has it stated that the sale of Ameron's Coatings Division to PPG included a transfer of any or all liability to PPG.  Further, Plaintiffs state that PPG has not stated, and has not supplied documents to Plaintiff, to support Ameron's claims of sale and transfer of its entire Little Rock, Arkansas operation to PPG.

The Court agrees with PPG.  PPG's objection is sustained.

Accordingly,

IT IS HEREBY ORDERED THAT PPG Industries, Inc.'s Motion to Quash and for Protective Order (Docket No. 175) be, and it is hereby, GRANTED in part, and DENIED in part.

IT IS SO ORDERED this 5th day of March, 2008.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE